## FRITSCH v. NEW YORK & QUEENS COUNTY RY. CO.

(Supreme Court, Appellate Division, Second Department. April 29, 1904.)

1. CONTRIBUTORY NEGLIGENCE—PERSONS NON SUI JURIS.
    The jury may find that a boy 7½ years of age is not chargeable with contributory negligence.

2. STREET RAILWAYS—PERSONS ON STREETS—NEGLIGENCE—EVIDENCE—ABSENCE OF FENDER.
    In an action against a street railway company for the negligent killing of a person on the streets, evidence that no fender was on the particular car which caused the accident is admissible.

3. SAME—NEGLIGENCE—SAFEGUARDS IN COMMON USE—FAILURE TO SUPPLY.
    Negligence may be predicated on the omission of a street railway to provide its cars with such safeguards as a fender, where the jury is satisfied from the evidence that the injury would have been prevented by the use of such a safeguard, and they are usually attached to cars of similar construction operated in similar localities generally throughout the country, and have been proved ordinarily efficacious for the protection of persons on the highway.

4. SAME—ACTIONS—INSTRUCTIONS—LIMITATION OF EVIDENCE.
    In an action against a street railway for the negligent killing of a person on the highway, where the use of fenders on other car lines in the locality had been proved, without objection, and the judge, in response to the request of defendant's counsel for further instructions, told the jury, in effect, that they were to consider the absence of a fender on the car which caused the accident only in connection with the management of the car at the time when the accident occurred, the jury could not have been misled on the subject of fenders so as to predicate negligence on the street railway's omission to supply them generally.

Appeal from Trial Term, Queens County.

Action by August G. Fritsch, as administrator of George Fritsch, deceased, against the New York & Queens County Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

George F. Hickey (William E. Stewart, on the brief), for appellant.
S. S. Whitehouse, for respondent.

WILLARD BARTLETT, J. This is an action to recover damages for the negligent killing of the plaintiff's son, a boy 7½ years of age, who was run down by one of the defendant's electric cars upon a street crossing in Astoria, in the borough of Queens. There was evidence from which the jury could find that the motorman ought to have seen the boy in season to avoid injuring him, and that the motorman, who was running his car at a speed of 20 miles an hour, was looking to the side, instead of to the front, of the car at the time of the accident. The age of the child was such that the jury were at liberty to find that he was not chargeable with contributory negligence. Stone v. Dry Dock, etc., R. R. Co., 115 N. Y. 104, 21 N. E. 712.

It does not appear that there was any municipal ordinance in force, applicable to the locality where this accident occurred, requiring street

¶ 2. See Street Railroads, vol. 44, Cent. Dig. § 235.

cars running therein to be provided with fenders, and as matter of fact there was no fender upon this car.   The only serious question which arises on this appeal relates to the reception of evidence tending to show that fenders were in common use upon street cars in other parts of New York and in other cities, and the refusal of the learned trial judge to charge, as requested by the defendant, that the absence of fenders on the cars of the defendant could not be considered as negligence or a want of care and prudence.   I think there can be no doubt that it was proper to admit evidence of the fact that there was no fender on this particular car.   Indeed, this proof was introduced without objection.   In Oldfield v. New York & Harlem R. R. Co., 14 N. Y. 310, 320, the plaintiff's intestate, a girl about seven years of age, was run down and killed by a car drawn by four horses on a street in the city of New York.   Upon the trial evidence was received to show that there were no guards in front of the wheels of the car, although nothing was said about the absence of such guards in the complaint, which merely charged that the car was driven over the child carelessly and negligently by the servant of the defendants.   Upon an appeal to the Court of Appeals that tribunal affirmed a judgment in favor of the plaintiff, notwithstanding the admission of this evidence. One of the opinions was written by Comstock, J., who said that in respect to the proof of the absence of guards he concurred in the observations of Mr. Justice Woodruff in the Superior Court, who thought the evidence admissible on the ground that what would be prudent and careful in the management of a well-constructed car provided with brakes and guards to prevent injury in case of accident might be imprudent and careless in driving a car not thus provided.   In regard to the use of fenders on other cars a witness for the plaintiff testified, without objection, that he had seen them on other cars in New York and Brooklyn and Jamaica for about four years, and that these fenders were in general use.   He was then questioned and answered as follows:

"Q. Were they in general use on other roads?   (Objected to as incompetent, irrelevant, and immaterial.   Objection overruled.   Exception.)   A. Yes, sir. Q. Had you seen them on street cars in other cities?   (Same objection, ruling, and exception.)   A. Yes, sir.   Q. What other city?   A. New York, Louisville. The Court:   We won't take Louisville.   Strike that out.   Q. In New York City and Brooklyn?   A. Yes, sir."

The witness then went on to testify, without objection, that he had never seen a fender on a car in Queens county; and that he had ridden over other roads, including the Brooklyn Heights, in Queens county— the road that goes from Brooklyn to Jamaica—and that they used fenders on those cars, and always had.   Another witness for the plaintiff, who had been a motorman for 10 or 12 years on different lines in different cities, testified that he had observed the cars in Brooklyn and Queens county and New York.   He was then asked:

"During the last ten years, tell us whether or not fenders have been in general use on such cars.   (Objected to as incompetent, irrelevant, and immaterial. Objection overruled.   Exception.)   A. Yes, excepting one corporation that does not use them, that I know of.   Q. New York and Queens County?   A. Yes, sir; and Broadway Road, New York.   Q. Do you know what the purpose of these fenders is?   (Objected to as incompetent, irrelevant, and immaterial.

Objection overruled. Exception.) A. They are to prevent accidents to pedestrians and children and people; life savers, to prevent accidents to people. They have been in general use on the roads in Kings county and in New York county for the last ten years."

After the learned trial judge concluded his principal charge to the jury, the counsel for the defendant asked him to charge "that absence of fenders on the cars of the defendant cannot be considered as negligence, or a want of care or prudence." To this request the court responded as follows: "That I decline, because they may consider the equipment of the car, in connection with the speed at which it was running, and all the other things belonging to the use of such a car as part of the paraphernalia and surroundings and equipment that go to make up the particular car with which the accident happened." To this refusal to charge as requested and to the modification the counsel for the defendant duly excepted.

It cannot be regarded as yet definitely settled by authority in this state to what extent street railroad companies are obliged, in the absence of statute or ordinance on the subject, to adopt safeguards against injuring persons upon the highway likely to arise out of their want of care in the operation of their cars. Judge Seymour D. Thompson, in his careful and very complete treatise on the Law of Negligence, says that the use of fenders, pilots, or safety guards in front of street cars to minimize the danger to pedestrians who are run against by the cars is a modern device, which street railway companies have been compelled to adopt by statutes and municipal ordinances. "At the same time," he adds, "these appliances have not proved as effectual for the protection of pedestrians as was expected, and are still regarded by some as of doubtful utility. While these devices were in an experimental stage it was clearly not negligence per se for a street railway company to fail to adopt them, unless required to do so by statute or ordinance." 2 Thompson on Negligence, § 1393. The case of Platt v. The Albany Railway, 170 N. Y. 115, 62 N. E. 1071, throws no light on the subject, because there it appeared that there was an ordinance requiring the use of fenders as soon as an approved pattern had been adopted by the common council, and the only ground on which the defendant railway company could be held negligent was that they had not acted speedily enough in procuring the prescribed pattern after the common council had acted.

In Buente v. Pittsburg, etc., Traction Co., 2 Pa. Super. Ct. 185, which was an action against a street railway company, decided in 1896, the superior court of Pennsylvania said:

"The general rule, equally applicable to spark arresters, pilots, fenders, and other devices intended to promote the safety of persons and property, whether used on steam or street railways, is briefly stated in Henderson v. Railway Company, 144 Pa. 461, 22 Atl. 851, 16 L. R. A. 299, 27 Am. St. Rep. 652, as follows: 'It is the duty of railway companies to adopt the best precautions against danger in general use, and which experience has shown to be superior and effectual, and to avail themselves of every such known safeguard or generally approved invention to lessen the danger.'"

The decision cited asserts a more stringent rule 'than was applied to the defendant by the learned trial judge in the case at bar. It declares it to be the duty of railway companies to adopt the best

precautions against danger in general use; whereas the jury in the present case were instructed that the defendant was only required to use such safeguards as had generally been adopted on similar railways. I quote the language of the charge on this subject to which no exception was taken:

"Again, the proposition of law obtains that, while a railroad company is not bound to adopt any untried appliance, or to use every possible contrivance which the highest skill might suggest, yet it is guilty of negligence if it fails to use reasonable care, after reasonable time is afforded to do so, to equip the cars on its road with safety appliances in general, practical use on similar railways, provided such negligence causes the accident."

On the whole, I think the correct view is, where a jury is satisfied from the evidence that the injury would have been prevented by the use of a safeguard, such as a fender, which is usually attached to cars of similar construction, operated in similar localities generally throughout the country, and which has proved ordinarily efficacious for the protection of persons upon the highway, they are entitled to predicate negligence upon the omission to provide the cars with such safeguards. But it is doubtful whether the record in this case really raises any question as to the applicability of this doctrine, assuming it to be sound in law. As has already been pointed out, the use of fenders on other lines in Greater New York and other localities had been proved without objection before any exception was taken by the defendant; and the learned trial judge, in what he said in response to the request of defendant's counsel for further instructions on the subject, indicated that the jury were to consider the absence of a fender on the particular car which caused the accident only in connection with the management of the car at the time when the plaintiff's child was killed. In my opinion, the jury could not have been misled by any evidence or instruction in the case on the subject of fenders, and I think, therefore, that the judgment should be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.

WOODWARD, J. (concurring). I reach the same conclusion as that of Mr. Justice BARTLETT, because I am persuaded that the record in this case does not raise the questions presented upon defendant's brief in reference to the evidence respecting the use of a fender upon the car producing the injury. The rule was laid down in Steinweg v. The Erie Railway, 43 N. Y. 123, 217, 3 Am. Rep. 673, that the defendant "was guilty of negligence, if it adopted not the most approved modes of construction and machinery in known use in the business, and the best precautions in known practical use for securing safety. If there was known and in use any apparatus which, applied to an engine, would enable it to consume its own sparks, and thus prevent the emission of them to the consequent ignition of combustible property in the appellant's charge, it was negligent if it did not avail itself of such apparatus. But it was not bound to use every possible prevention which the highest scientific skill might have suggested, nor to adopt an untried machine or mode of construction." And this rule has been recognized and applied in various cases involving damages from sparks emitted by locomotives and producing

fires upon adjacent premises. Babcock v. Fitchburg R. R. Co., 67 Hun, 469, 471, 22 N. Y. Supp. 449, reversed upon another point, without criticism of the rule, 140 N. Y. 308, 35 N. E. 596; see dissenting opinion by O'Brien, J., at pages 318, 319, 140 N. Y., and page 599, 35 N. E., and authorities there cited. It is true, of course, that fenders have been used in some cities by reason of ordinances prescribing their use, and it is admitted that their use has been disappointing, and that they have not accomplished all that was expected of them. There is no evidence in this case that they have ever been used as the result of practical experience, demonstrating their greater safety; and the mere fact that they have been in use in New York and Brooklyn, under the provisions of ordinances, does not warrant a jury in finding that it was negligent for this defendant to operate its cars upon a suburban line without fenders. To make the evidence at all relevant in this action, it was necessary at least to show that a car with a fender was safer, and that plaintiff's intestate would have been less liable to have been injured had there been a fender (Babcock v. F. R. R. Co., 140 N. Y. 308, 312, 35 N. E. 596); but no such evidence was produced, and the jury were permitted to consider the evidence upon the theory that it had some bearing upon the question of defendant's negligence. It is entirely obvious from the evidence in this case that the question of the presence or absence of a fender was of no possible consequence, unless it be to permit the jury to speculate as to the relative injuries which might have resulted. The weight of evidence is that the car was running at the rate of 20 miles an hour, that the plaintiff's intestate stepped upon the track within a few feet of the car, and that it struck him before the speed had been reduced at all, or practically so. Traveling at this rate, it could make little difference to the boy whether there was a fender or not. The fender had nothing to do with the control of the car. Its only purpose was to minimize the results of an accident, and whether the plaintiff's intestate was killed or merely injured had no relation to the question of defendant's liability—to the question of its negligence. The question at issue is not whether the boy might have been less injured, but whether the defendant was negligent in the operation of its car, and whether the car carried a fender or not had no bearing whatever upon this issue. If the defendant had seasonably objected to this testimony, and preserved its rights by an exception, or if it had excepted to the charge of the learned trial justice, I should have been disposed to hold that there was reversible error in this case. If the fender was designed for controlling the car—if it was in the nature of a brake or emergency appliance, intended to stop the car upon short notice— and the evidence had tended to show that it was an appliance which common use had approved, and there had been evidence to show that with its use the car might have been stopped in time to avert the accident, it would constitute a proper element in the case; but to hold that the defendant may be charged with negligence for not using an appliance which is merely intended to mitigate the results of an accident, where there is no evidence to show even that this result might have been accomplished, is carrying the doctrine of liability beyond any point sanctioned by authority. Under the plaintiff's theory and

evidence the boy would have been hit by this car whether equipped with a fender or not. If the car was running at 20 miles an hour, he must inevitably have been seriously injured, if not killed; and the extent of the injuries has no bearing whatever upon the question of the defendant's negligence in so operating the car that it came in contact with the plaintiff's intestate. The extent of the injuries determines the measure of damages and the character of action, but not the primary question of actionable negligence. That depends upon the degree of care used in the operation of the car under the circumstances surrounding the accident. The defendant, being liable for the contact with the boy, the absence of the fender, assuming that it would have lessened the injuries, simply imposes a different measure of damages than that which would have otherwise prevailed. In other words, I do not think a fender is such an appliance as goes to the question of negligence, but is merely designed for the purpose of lessening the liability in the event of an accident, and as such it has no place in the case as a foundation for the jury to predicate negligence in the operation or construction of the car.