JEWELL MALOTT, by her Next Friend, LULA MAL-
OTT, Appellant, v. FORD F. HARVEY and ROB-
ERT J. DUNHAM, Receivers of the METROPOLI-
TAN STREET RAILWAY COMPANY, Respond-
ents.

#### Kansas City Court of Appeals, June 10, 1918.

1. **NEGLIGENCE: Street Railways: Minors.** The plaintiff, a minor,
sued by her next friend to recover damages for injuries received
when she was struck by the defendant's street car. She passed
over the northbound track and almost cleared the southbound track
when a street car came up behind her from the south and struck
her with its northeast corner knocking her violently to the pave-
ment and injurying her. *Held*, that the court erred in not sub-
mitting to the jury the question of whether or not the motorman
saw the plaintiff in time to have avoided the injury.

2. ————: ————: ————. Where a child of tender years goes into
danger, and the motorman saw her and could reasonably have
avoided the injury but did not do so, or in other words the motor-
man's negligence was subsequent to that of the child, and there-
fore the proximate cause of the injury, even under the Kansas rule,
this should have been submitted to the jury.

Appeal from Jackson Circuit court.—*Hon. Daniel E.
Bird,* Judge.

REVERSED AND REMANDED.

*Yates & Goble* for the appellant.

*Roscoe P. Conklin* for the respondents.

TRIMBLE, J.—Plaintiff, a little girl seven years
old, was going diagonally across Tenth street in Kan-
sas City, Kansas, carrying some groceries in her arms,
walking in a northeast direction and looking to the
north. She passed over the west, or northbound, track
of the defendant's street railway and had almost
cleared the track when a street car came behind her

from the south and struck her with its northeast corner knocking her violently to the pavement and injuring her. She brought this suit by next friend to recover damages.

The petition charged that the operatives of the car "negligently caused, suffered or permitted said car to run into and against plaintiff . . . when they saw plaintiff approaching; close to; upon the track upon which said car was running and in a position of peril and oblivious to the presence of said car, in time thereafter by the exercise of ordinary care to have stopped said car or slackened the speed thereof or to have warned plaintiff of the approach thereof and avoided running into and injuring plaintiff but negligently failed to do so."

Aside from admitting the official character and *status* of the receivers, the answer was a general denial followed by this paragraph:

"Further answering said petition, defendants say that it is, and was at all the dates mentioned in plaintiff's petition, the law of the State of Kansas, as declared by the Supreme Court of the State of Kansas, which is the court of the last resort in said State, that there is no duty upon the motorman of a street car to begin to stop the same, until he actually sees a person upon the track or about to go upon the track into a position of peril. Such rule is announced to be the law, by the Supreme Court of the State of Kansas, in the following cases, as reported in the official reports of said court: Dyerson v. Ry. Co., 74 Kansas, 528; Railway v. Bentley, 78 Kansas, 221; Himmelwright v. Baker, 82 Kansas, 569; Marple v. Ry. Co., 85 Kansas, 705; Coleman v. Ry. Co., 87 Kansas; 190; Dunlap v. Ry. Co., 87 Kansas, 197. Wherefore, having fully answered, the defendants pray to be dismissed with their costs."

The reply was a general denial.

At the close of plaintiff's evidence the defendant offered a demurrer which was overruled. The de-

fendant thereupon offered in evidence the decisions cited in its answer. These were objected to by plaintiff as being outside the issues, because the laws of Kansas were not pleaded in the petition or in the answer and were not properly pleaded by defendant. These objections were overruled. The defendant offered no. futher testimony but renewed its demurrer. Whereupon, the court announced that it was going to rule, and would hold, that, under the Kansas decisions in evidence, the plaintiff had not made a case and the demurrer to the evidence would have to be sustained. In view of this, plaintiff took an involuntary nonsuit with leave to move to set the same aside. This motion being duly filed and overruled, plaintiff brought the case here by appeal.

In Miller v. Chinn, 195 S. W. 552, 554, it was ruled that in pleading foreign decisions pertinent parts thereof should be alleged so as to avoid the charge that mere conclusions of law were stated. And in Gibson v. Chicago Great Western Railway Co., 225 Mo. 473, 484-5, and in Wentz v. Chicago, Burlington & Quincy R. Co., 259 Mo. 450, 465, it is held that foreign laws "must be pleaded with the same certainty that any other extrinsic fact must be pleaded which is essential to a right of action or to constitute a defense;" and such pleadings should "not merely state conclusions of what counsel think they (the foreign laws) mean." It is a very serious question whether the answer sufficiently pleads the foreign decisions under the above rule. It would seem to be merely the pleader's conclusion that said decisions announce the rule that "there is no duty upon the motorman of a street car to begin to stop the same until he actually sees a person upon the track or about to go upon the track into a position of peril." And certainly there is no allegation of facts which would enable such foreign rule to constitute a defense to a petition which charged (as this one does) that the motorman saw plaintiff approaching, close

to, and upon the track, in a position of peril and oblivious to the car.

But inasmuch as the court acted upon the answer as sufficient and disposed of the case in accordance therewith, we need not pass upon the question of whether the answer was sufficient or not but will dispose of the case upon the theory that the answer was sufficient to bring to the court's attention the alleged rule in force in the jurisdiction where plaintiff's cause of action arose.

The action of the court was tantamount to holding that in no conceivable theory under the pleadings and the evidence could the jury find the motorman negligent and the defendants liable therefor. Now, even if the Kansas cases announce the rule as contended for by defendants, they do not reach far enough if the evidence is such that the *jury could reasonably find* that after plaintiff had gotten on the track and was in a place of danger, the motorman actually saw her and could reasonably have avoided injuring her and failed to make any effort to do so. Then again, the Kansas cases relied upon are all cases where plaintiff was an *adult* exposed to the full force of a charge of contributory negligence. In the main case, Dyerson v. Union Pacific R. Co., 74 Kan. 528, 533, the Supreme Court of Kansas manifestly recognizes that if negligence is not to be imputed to the plaintiff therein, the rule would not apply, by refuting the claim that negligence could not be imputed to him in that case. In the case of Kansas Pacific Ry. Co. v. Whipple, 39 Kans. 531, 540, the court held that, had the plaintiff been "an adult we might perhaps say as a matter of law, upon the facts disclosed by the trial, that he could not recover. [Citing cases.] But the party injured was not an adult; he was only a little boy in his ninth year of age." . . . "As the engineer knew of the presence of the boy upon the track as the engine was about crossing Main street, and as he must have known when he

saw him that he was a boy of tender age and not so capable of taking care of himself as an older person or an adult, he should have brought to bear, for the safety of the boy and his undeveloped judgment, the exercise of adult judgment and caution to prevent his being run over. If the boy had not been seen by the engineer upon the track, or if he had been seen too late to avert the accident, then an entirely different question would be presented for our determination.''

The evidence discloses nothing as to the experience, intelligence or capacity of the plaintiff in the case at bar beyond the fact that she was seven years old and had been entrusted with groceries to carry home. Hence negligence cannot be imputed to her as a matter of law. [Watson v. Southern Ry., 44 S. E. 375; Chicago Northwestern Ry. Co. v. Jamieson, 112 Ill. App. 69; Fritsch v. New York and Queens County Ry. Co., 87 N. Y. Supp. 942; Riley v. Salt Lake Rapid Transit Co., 37 Pac. 681] The theory upon which the Kansas rule rests is that if the negligence of the defendant and of the injured plaintiff is concurrent and exists up to the time of the injury, both have caused it and the plaintiff cannot recover. From which it logically would follow that if a plaintiff is of such tender years that contributory negligence is not to be imputed, the rule would not apply, at least where the defendant actually saw the plaintiff and her danger.

There is another view which would seem to make the question of the defendants' liability one for the jury even if the Kansas rule shall be applied in its full strictness. The plaintiff was on a paved street and had a right to travel thereon and to be where she was. [Seiffert v. Schaible, 103 Pac. (Kan.) 529.] She was not a trespasser, and the motorman could expect persons to be on the street, and therefore it was his duty to watch. She was going *diagonally* across the street. Consequently her negligence, if

any, was in entering upon the track without looking for or observing the approach of a car from the south. An adult, who was watching her, thought she had time to get across even going in the direction she was. We think there is room for the finding that after she negligently got into danger, the motorman saw her and could reasonably have avoided the injury but did not do so. Or, in other words, that his negligence was subsequent to hers and was therefore a proximate cause of the injury even under the Kansas rule in its full force. In Dyerson v. Railroad, supra, p. 534, it is said: "There is a general agreement in the authorities that where an engineer actually sees a person in a position of danger, and then fails to do what he reasonably can to prevent an accident, the railroad company is responsible for the resulting injury, irrespective of the question of contributory negligence." And in Marple v. Topeka Railway Co., 85 Kans. 699, 706, it is said: "It is true, as stated in the opinion in the Dyerson case (74 Kans. 528, 534), that a different principle would apply if the motorman actually saw the deceased in an exposed position of danger in time to have averted the injury."

There was evidence from which the jury could find that the motorman saw the little girl. There was nothing in the street to hinder his sight. He was looking straight ahead and there was no reason why he did not see as it was his duty to do. There is evidence that the distance between the west curb and the west rail was sixteen feet, also evidence that this distance was only twelve feet, nine inches, since it was the same as on the east side of the street the railway being in the center. There was evidence that the little girl was midway between the west curb and the west rail (that is, eight feet, or six feet three inches, from the track), when the car was seventy-five feet away and that when she got upon the track the car was fifty feet away, other evidence put it at thirty feet away. The little girl was going "just

about like a kid would walk.'' There was evidence that the car was going five or six miles an hour and that the car could have been stopped in twelve feet at six miles per hour or seventeen feet if going seven miles per hour; that a move of the handle, or perhaps two moves, according to whether the power was on ,or off at a place slightly down grade, would have accomplished the result; and that nothing whatever was done to stop or slacken the speed of the car. During all the time above mentioned, the little girl with her arms full of groceries was walking with her face to the north approaching the rails without hesitation and walking diagonally thereover. It is not clear how far *along* the track she went, but the evidence is ample to justify the jury in finding that the motorman saw her. [Johnson v. Atchinson, Topeka and Santa Fe Ry. Co., 56 Kan. 263.]

In our opinion the evidence afforded ample room for the submission of the case to the jury on a proper theory and hence the opportunity to submit the case upon a theory properly justified under the law and the evidence should not have been denied to plaintiff. The judgment is, therefore, reversed and the cause remanded for a new trial. And we make the same suggestion as was made in Miller v. Chinn, supra. All concur.