CHARLES MUSSER et al., Appellants, v. CARRIE MUSSER et. al., Respondents.

Division Two, March 26, 1920.

1. COMMON LAW: Pleading: Effect. The effect of the statute of Kansas which provides that "the common law as modified by the constitutional and statutory law, judicial decisions, and the conditions and wants of the people shall remain in force in aid of the general statutes of this State" extends no further than to assert the common law to be there in force as therein stated, and to render unnecessary any presumption that might otherwise obtain an account of that State not having been carved out of the original territory subject to the law of England. Considered in any other sense, the pleading of the statute is a mere conclusion.

2. ———: Definition: How Pleaded. The common law is not "a true body of law" in the sense that it is collected into a code or any particular book; but it began in statements and principles announced in decisions of courts, which have been multiplied and modified by subsequent decisions, until they are regarded as accumulated and approved expressions of what is right and just. In this country, the common law is inseparably identified with judicial decisions, and what is the common law of any particular

state is to be ascertained by an examination of its decisions, as precedents; and where an attempt is made to plead the common law of another state, the rules of decision of the courts of that State, as applicable to the particular case, are the things to be alleged, as the basis of the action. It is not sufficient to plead what counsel may think is the common law of the foreign state, but it, as well as its violations, must be pleaded with distinctiveness, as any other substantive fact.

3. ———: Pleading: Conclusions. In pleading the decisions of another state from which the common law therein is to be determined, pertinent parts of such decisions should be alleged, in order to avoid the charge of stating mere conclusions. If the common law of such foreign state is the basis of recovery or the constitutive fact of plaintiff's case, mere conclusions as to what counsel may think the decisions of its courts may mean will not suffice.

4. ———: ———: ———: Private Charity. In a suit to construe a will, devising property in Kansas and probated in that State, the will was alleged to be invalid for that it attempted to create a private charity, in violation of the common law in force in that State, and the petition, after a general averment "that the common law in force in Kansas is and was in part at all times mentioned as follows," proceeded, in several paragraphs, in some of them arbitrarily and in others argumentatively, to state what is alleged to be the law of Kansas relating to wills and charities and the powers and duties of the donee (a school district) in reference thereto, but alleging nothing either affirmative, definite or precise as to what is the actual common law of the State. Held, that it is essential that the common law of Kansas itself, as found in the court decisions of the State, be pleaded as any other fact, and the petition is not good as against a general demurrer.

5. ———: ———: ———: Ultimate Facts. A petition, in stating the ultimate facts in regard to the common law of another state, relied on as the basis of the action, and not the law itself, is not sufficient. Ultimate facts are nothing more than issuable, constitutive or traversable facts essential to the statement of a cause of action, and are not mere conclusions as to what the facts are.

6. ———: ———: Demurrer: Admissions. A general demurrer to a petition does not admit conclusions of law. Where the petition simply contains general averments as to what the common law of another state is, but does not plead that law itself as facts, a demurrer to it that it does not state facts sufficient to constitute a cause of action does not admit the common law of the State to be what the averments allege it to be.

7. ———: ———: Private Charity: Gift for Educational Purposes.
The Supreme Court of Kansas has never decided that every public
charity must be such as the State may lawfully maintain by pub-
lic taxation.  Therefore, an allegation in the petition to construe
a will by which property was bequeathed "for the purpose of creat-
ing an endowment for the education of worthy young men and
woman of a school district" in a named county, "preference to
be given to those who are orphaned," that the will attempted to
create a private charity, and that the gift was void because the
object was not one which "the State itself ought and lawfully
might endow and support with public resources," does not and
cannot state a cause of action, because there are no decisions of
that State so holding.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

AFFIRMED.

*Carl G. Wagner, Frank T. Burnham, Frank W. Yale,* and *Ernest S. Ellis*, for appellants.

(1) The will, by its terms, refers to and provides that it shall be construed under the laws of the State of Kansas. This reference and provision makes the law of Kansas as much a part of the will as though it had been inserted *verbatim* therein. Shulsky v. Shulsky, 98 Kan. 69; Chambers v. McDaniel, 28 N. C. 229; Vestry v. Bostwick, 8 App. B. C. 456; 40 Cyc. 1094, notes. (2) The trust sought to be created by the will is not a public charity, and is void on its face, under the laws of the State of Kansas, as being against the rule prohibiting perpetuities of title in estates, because the fund provided can only be used for the benefit of certain persons to be selected and certified by the "school board" from a classification of individuals, which does not arise in the course of nature, but is wholly arbitrary and grows out of and only exists in the "private conventions, class associations and artificial distinctions of men." Troutman v. DeBoissiere, 66 Kan. 1. (3) The power to appoint and certify beneficiaries sought by said will to be conferred upon the

"school board" cannot be exercised. Its powers are fixed by statute and it cannot be the recipient of or exercise any power sought to be conferred upon it by an individual. Hence, the intended beneficiaries of the trust cannot be legally ascertained and determined. Harwood v. Tracy, 118 Mo. 637.; Dodson v. Scruggs, 47 Mo. 285; Re Hoffer's Estate, 70 Wis. 407; Leman v. Sherman, 117 Ill. 657; Sinking Fund Commrs. v. Walker, 6 How. (U. S.) 143; Shaw v. Payne, 12 Allen (Mass.) 293; Dunbar v. Soule, 129 Mass. 284; McClary v. McLain, 2 Ohio St. 368; English v. Sailors' Snug Harbor, 3 Pet. (U. S.) 99; 1 Perry on Trusts, sec. 296; 35 Cyc. 899 et seq.; 39 Cyc. 272, and notes; 28 Am. & Eng. Ency. (2 Ed.) 965; 12 Am. & Eng. Ency. 301. (4) But even if such power of appointment could be conferred upon the "school board" the provisions of the will are incomplete and insufficient to permit action thereunder, because no standard or measure of the required qualifications of beneficiaries is provided, and no means or method is named by which the facts neces- sary to be certified may be ascertained. In re Hauck, 70 Mich. 410; Fountaine v. Ravenel, 19 How. (U. S.) 368; Beekman v. Bonsor, 23 N. Y. 298; Grimes v. Harman, 35 Ind. 220; Gallego's v. Atty. Gen., 3 Leigh, 450; Dashiel v. Atty. Gen., 5 Har. & Johns. 392; Hughes v. Daly, 49 Conn. 34; Lepage v. McNamara, 5 Iowa, 124; White v. Fisk, 22 Conn. 31. (5) The trust attempted to be created by the will cannot be sustained as a public charity because the State and the public, through its courts, possess no "admitted right of visi- tation and control." Troutman v. DeBoissiere, 66 Kan. 1. On the contrary the will by its terms expressly pre- cludes the courts from the exercise of such right and power.

*Dwight M. Smith* and *Goodwin Creason* for respond- ents.

(1) The attack upon the will in question being predicated upon the laws of Kansas, and no laws of

Kansas that affect the validity of the will being pleaded, the amended petition of plaintiff below stated no cause of action, and demurrer was properly sustained. Gibson v. Railroad, 225 Mo. 485; Rialto Co. v. Minor, 183 Mo. App. 128; McDonald v. Life Assn., 154 Mo. 628; Lee v. Mo. Pac., 195 Mo. 415; Coleman v. Lucksinger, 224 Mo. 14; Ginnochio v. Railroad, 155 Mo. App. 168; State v. Harty, 208 S. W. (Mo.) 837. (2) Since plaintiff's amended petition alleges the common law to be in force in Kansas, and pleads no statute or decision of Kansas modifying it, a Missouri court in construing the will in question must presume the common law of Kansas to be the same as the common law of Missouri, as found in its own decisions. McPike v. McPike, 111 Mo. 226; Kollock v. Emmert & Co., 43 Mo. App. 570; Jordan v. Pence, 123 Mo. App. 324; Morrissey v. Wiggins Ferry Co., 47 Mo. 525; Bank v. Com. Co., 139 Mo. App. 124. (3) The will in question, under the laws of Missouri, creates a public charity of the most unimpeachable character. Crow ex rel. v. Clay County, 196 Mo. 261; Catron v. Scarritt Collegiate Institute, 264 Mo. 725; Robinson v. Crutcher, 209 S. W. (Mo.) 104; Strother v. Barrow, 246 Mo. 241; Sandusky v. Sandusky, 261 Mo. 357; Hadley v. Forsee, 203 Mo. 426; Buchanan v. Kennard, 234 Mo. 139; Buckley v. Monck, 187 S. W. (Mo.) 34; Cummings v. Dent, 189 S. W. (Mo.) 1161; Sappington v. School Fund Trustees, 123 Mo. 32; Anderson v. Roberts, 147 Mo. 486; Lackland v. Walker, 151 Mo. 257; Chambers v. St. Louis, 29 Mo. 543; Howe v. Wilson, 91 Mo. 45; Powell v. Hatch, 100 Mo. 592; Barkley v. Donnelly, 112 Mo. 561; Missouri Hist. Society v. Academy of Science, 94 Mo. 466. (4) The will is equally valid under Kansas statutes and decisions, as well as general law relating to charitable trusts. Troutman v. DeBoissiere, 66 Kan. 1; Washburn College v. O'Hara, 75 Kan. 700; Keeler v. Lauer, 73 Kan. 393; Secs. 9850, 9840, 9841, 7443, 7445, Statutes of Kansas 1909; 5 R. C. L. 309; 11 C. J. p. 361, sec. 20. (5) Since the will creates a valid public charity,

and provides competent trustees to take title, the heirs-at-law have no interest in the estate, and the plan provided in the will for designating beneficiaries does not concern them. W. C. A. v. Kansas City, 147 Mo. 103; Academy of Visitation v. Clemmens, 50 Mo. 167; Crow ex rel. v. Clay County, 196 Mo. 261; Sandusky v. Sandusky, 265 Mo. 234; Glaze v. Allen, 213 S. W. 785; Mott v. Morris, 249 Mo. 147; Barkley v. Donnelly, 112 Mo. 570; Harwood v. Tracy, 118 Mo. 631; 5 R. C. L. 299, 309, 370; 11 C. J. 342.

WALKER, C. J.—This action was brought in the Circuit Court of Clay County to obtain a construction of the will of Benjamin Musser. A demurrer to the petition, which alleged that it did not state facts sufficient to constitute a cause of action, was sustained. Refusing to plead further, a judgment was entered against the plaintiffs, who thereupon appealed to this court.

The property devised was located in Jewell County, Kansas. The will provided for the probating of same in that county and that it was to be construed under the laws of that State.

The petition alleged the invalidity of the will in that by its terms it created a private charity, in violation of the common law in force in Kansas applicable thereto, and was hence void. The sufficiency of the petition is assailed as to the manner in which it pleads the exis-tence of the common law in that State.

Under Section 9850, General Statutes of Kansas 1909 (Dassler), set forth in the petition, it is provided that "the common law as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of this State."

The effect of the pleading of this section extends no further than to declare the common law in force in Kansas as therein stated, and to render unnecessary any presumption that might otherwise obtain on account of that State not having been carved out of the

original territory subject to the law of England. Considered in any other sense the pleading of this statute is a mere conclusion. [Gibson v. Railroad, 225 Mo. 473.]

Other sections of the statutes of Kansas pleaded are irrelevant to the determination of the matter at issue.

The manner in which the common law is pleaded is as follows:

"That the common law in force and in effect in the State of Kansas is and was, at all the times herein mentioned, in part as follows:

"That where a conveyance or will attempts to create and vest property in trust in perpetuity in trustees and their successors for the benefit of beneficiaries therein designated, the instrument is void on its face as violating the rule against perpetuities of title in estates, unless the trust so attempted to be created constitutes a public charity.

"The beneficiaries of a valid public charity must partake of a quasi-public character. The public must be under obligations to them as a class; as a class they must have some claim upon the public and that claim must be one founded in nature and cognizable by the instincts of a common humanity; it cannot be one growing out of or existing in the private conventions or class associations or artificial distinctions of men. Public charities may be restricted to a particular class in the State or of its municipal divisions, but they must be general for all the designated class within the particular municipality. Such classification must be based on some obvious natural distinction, having reference to the merits hoped to be attained. It must not be arbitrary or artificial. The class must stand in a natural and meritorious relation to the public at large. A gift for a general public use must be for an object which the State itself ought or lawfully might endow and support with public resources.

"The rule against perpetuities was devised to prevent the perpetual entailment of estates and to give them over to free conveyance. That rule should not be

relaxed except in the interest of the general public, and it is not relaxed except where the public itself holds the title and is the trustee, or, if not holding the title and acting as the trustee, possesses an admitted right of visitation and control.

"The right and power of visitation on the part of the State is lodged in the courts having equitable jurisdiction, to be exercised at the instance of the Attorney-General of the State, and unless the trust be of such a nature as that the Attorney-General might bring an information in the courts to enforce its administration it cannot be a public charity.

"In the State of Kansas, the public duty which the Attorney-General may sue to enforce, or the public wrong which he may sue to prevent, must be a duty or a wrong affecting the whole community or affecting the community in general, or a matter affecting the interests of the entire public. A charity, which the Attorney-General of the State of Kansas can sue to enforce or conserve must be a charity of a character so public as to interest the whole community—the community in general—the entire public."

I. Remote as the inquiry may seem upon a superficial consideration of the subject, the question as to what is meant by the "common law in force in Kansas" demands solution before it can be intelligently determined whether the petition is, as was held by the trial court, fatally defective in not properly pleading that law.

The opinions of many of our courts of last resort, including our own, state generally that the common law "imports a system of unwritten law not evidenced by statute, but by traditions and the opinions and judgments of the sages of the law." The Supreme Court of the United States has in several instances (West. U. Tel. Co. v. Call Pub. Co., 181 U. S. 92; Kansas v. Colorado, 206 U. S. 1. c. 96) answered the inquiry by quoting the language of Kent (1 Com. 471) that "the common law includes those principles, usages and rules

of action applicable to the government and security of persons and property, which do not rest for their authority upon any express and positive declaration of the will of the Legislature." These definitions afford us little aid in the present inquiry. In what manner is it to be determined according to any definite and uniform plan which will serve as a rule for judicial guidance, what the "traditions" are and who are the sages "whose opinions and judgments" are to enlighten us as to what constitutes the common law? If "principles, usages and rules of action" are to afford the required enlightenment, in what do these essentials consist, from what sources are they to be derived and how is their uniformity to be determined in any particular case?

There is, says Mr. Justice EWART in effect in discussing this question (40 Can. L. J. 95), "a short way of settling it. If there was or is any true body of law known as the Common Law, apart from the decisions of the courts, let him who asserts the fact quote or otherwise refer us to a single item of it. The *Leges Barbarorum* we know; the laws of Justinian we know; the laws of the Twelve Tables (B.C. 500) we know; even the laws of Hammurabi of Babylon (B. C., say 2250) we know, and can quote from. Will somebody please furnish us with an extract from the 'Common Law of England?

"Surely this can easily be done. Go to the law reports and read to us. The judges, if they were deciding according to this 'true body of law,' will undoubtedly so indicate. No, these modern judges seem to know nothing of it. Open, then, these musty old Year Books; thumb them all. No? Try the Rolls—back as far as John's reign. Nothing there? Well, don't despair; in the works of Bracton (Chief Justiciar of England 1265-1267) or in those of Glanvil (the oldest writer on English jurisprudence, and Chief Justiciar of England in the reign of Henry II) there must be some trace of this 'true body.' Not a word?

"Well, where did these judges and writers get the law that they tell us of? Mr. Justice McCLAIN would answer:

42—281 Mo.

" 'By ascertaining what it was customary for English judges to decide in like cases. The reading of Bracton, himself, beyond the introductory pages, proves conclusively the fact. . . . He refers to decisions of the courts, although he is compelled to do so from current or personal knowledge, as reported decisions were as yet apparently unknown, and instead of announcing general principles, borrowed from any code, or pandects, or digests, he tells what was decided in an assize of mort d'ancestor, &c. . . . His successors were the digesters and abridgement-makers—Fitzherbert and Brooke and Rolle and Viner—and these men concerned themselves with the decisions of the English judges and prepared the way for Coke and Hale and Blackstone, the great expounders of the distinctively English system of law.' [Address, American Bar Assn., 1902.]

"If I am to be told that nobody says that anybody can give extracts from the Common Law, and that what is meant is that the Common Law consisted of certain well known principles upon which the decisions were based, then I ask profert of one of these principles. And if it be alleged that production is impossible, for that the said principles were in the mind or heart, or consciousness, of the people, and not otherwise or elsewhere, I still require at least a hint as to what they looked like before believing in their corporeality."

Prior to the appointment by William I. of a Chief Justiciar, who was a permanent judicial officer, having supreme jurisdiction throughout England, there may have been in existence customs and usages by which law was crudely administered by the Saxon local folk courts, but when professional judges were created, which followed the appointment of the judicial officer, they at once commenced to reduce the tangle of customs and usages to order and to construct that system which has for its ultimate aim the ascertainment of rules which shall regulate human relations in accordance with the common sense of right. [Nature of Positive Law, Lightwood.]

The Supreme Court of the United States in the case of Kansas v. Colorado, supra, at page 96, after quoting the passage from Kent referred to, declares the true rule in regard to what constitutes the common law, to this effect: "that it does not rest on any statute or other written declaration of the sovereign, but there must, as to each principle thereof, be a first statement. These statements are found in the decisions of courts and the first statement presents the principle as certainly as the last. Multiplication of declarations merely adds certainty. For, after all, the common law is but the accumulated expression of the numerous judicial tribunals in their efforts to ascertain what is right and just between individuals in respect to private disputes."

Mr. Lightwood, in his learned treatise on the Nature of Positive Law (p. 359), says that "all law is made either directly by way of statute or obliquely by judicial decision. These are decided to be the only modes in which law can be made. Hence it does not exist by virtue of being customary to or in accordance with legal opinion or with natural law."

Mr. Pomeroy says "that the initial activity in creating the common law of England was done not by Parliamentary legislation, nor by royal decrees, but by the justices in their decisions of civil and criminal causes." [Eq. Juris. sec. 13.]

Says Mr. Austin, after reviewing the entire subject: "There can be no law without judicial sanction and until a custom has been adopted as a law by courts of justice it is always uncertain whether it will be sustained by that sanction or not." [II Lectures on Juris., p. 564.]

Thus it will be seen that the common law in this country is inseparably identified with the decisions of the courts. "Even if we were to assume that the adoption of the common law of England means the adoption of a single system or one uniform and consistent set of principles, usages and rules of action applicable to the government and security of persons and property, we are yet forced to recognize that each of the separate

states has adopted the common-law principle of the authority of precedent, and acts on the theory that what its courts decide is the real common law governing each question passed on." [Pope, Com. Law in U. S. 24 Harv. L. R. 12.]

If, therefore, we are to continue to recognize the authority of precedent, it is essential in determining what the common law is in respect to any question, to refer to the decisions of the courts of last resort therein. These, if sufficiently comprehensive, are decisive of the case. Precedents elsewhere established by courts under the common-law system, whether in England or one of our States, may serve as guides to a court in the absence of its own former rulings, in determining what the applicable principle of the common law is in a given case. Further than this their province is purely persuasive and they rise to the dignity of rulings in a particular jurisdiction only when given judicial sanction. When, therefore, it is pleaded, as it is in the case at bar, that the matter at issue is to be determined by the common law in force in a particular jurisdiction, we ascertain what that law is by an examination of the decisions of the courts. Their importance in the determination of the question is thus made manifest, and is emphasized where, as here, the law invoked is substantive or forms the basis of the action. Where this is true the pleading of the law becomes an essential averment. [Hazelett v. Woodruff, 150 Mo. 539, 51 S. W. 1048; Clark v. Barnes, 58 Mo. App. 672; Banchor v. Gregory, 9 Mo. App. 104; Mystic Legion v. Brewer, 75 Kan. 734.]

II. The general rule, leaving out of consideration for the moment any distinction between the manner in which the common or the statute law of a State is to be pleaded, is that where one relies upon the law of another State to sustain his cause of action, he must not only state with distinctness what that law is, as in pleading any other substantive fact, but also the facts which constitute its violation, that the court may be enabled to judge of its effect. Mere con-

Pleading.

clusions as to what counsel may think the law means will not suffice. [Wentz v. Railroad, 259 Mo. 450, 168 S. W. 1166, 40 Ann. Cas. 317; Gibson v. Railroad, 225 Mo. l. c. 483; Coleman v. Lucksinger, 224 Mo. l. c. 14.] In pleading decisions of other States from which the common law therein is to be determined, to avoid the charge of stating mere conclusions, pertinent parts of such decisions should be alleged. [Miller v. Chinn, 195 S. W. l. c. 554; Malott v. Harvey, 204 S. W. 940; Lillard v. Lierly, 200 Mo. App. 144, 202 S. W. 1057; Ginnochio v. Railroad, 155 Mo. App. l. c. 168; 9 Ency. Pl. & Pr. 543.] These cases sufficiently announce the rule in this jurisdiction and it is not deemed necessary to burden the opinion with like rulings from courts of last resort elsewhere. While the rule as to what constitutes a sufficient pleading of a foreign law when the same is a constitutive fact in a case, may be deduced from the foregoing statement of general principles, illustrations drawn from adjudicated cases afford more definite criteria as to the distinctive differences between conclusions and direct and positive statements of fact.

In Wabash Railroad Co. v. Hassett, 170 Ind. l. c. 376, the Supreme Court, in ruling upon a demurrer to the petition, had under consideration the following allegation as to the common law of Illinois: "That by the common law of the State of Illinois on October 13-14, 1905, employees of railroad corporations operating lines of railroad in such State were fellow-servants only when such employees were brought together in direct co-operation in the performance of a particular work at the time, etc." "This," said the court, "is manifestly no declaration as to what the common law of Illinois was upon the dates named; but, without setting out the substance of such law with regard to fellow-servants, the pleader has interpreted it for himself and merely alleges his conclusion as to its legal effect. This allegation is insufficient as against a demurrer for want of facts."

In Phinney v. Phinney, 17 How. Pr. 197, it was alleged that "under the laws of Spain a person became seized of certain real estate." In ruling upon a demur-

rer to the complaint the Supreme Court said.: "This kind of statement involves a mere conclusion or inference, in which the plaintiffs, it will be readily seen, may be greatly mistaken. In effect it expresses an opinion of the law and asks the court blindly to adopt it, without giving the court the necessary materials to test its correctness. Foreign laws are · mere facts, and, like other facts, must be set forth and proved.'' The demurrer was sustained.

In Cubbedge & Co. v. Napier, 62 Ala. 518, the averment that at the time of the execution and delivery of a note and mortgage under and by virtue of the laws of Georgia, "all title to property made as a part of a usurious contract or to evade the usury laws of the State are void,'' was held bad as not being an averment of fact, but a.conclusion of the pleader.

In Lomb v. Pioneer S. & L. Co., 96 Ala. 430, 11 So. 154, an averment that a note and contract were according to the laws of Minnesota legal, valid and non-usurious and that it is provided by the law of that State that premiums taken for loans made by a building and loan association shall not be considered or treated as interest, nor render such associations amenable to the usury laws, is bad because it is a statement of a conclusion and not of a fact.

In Templeton v. Sharp, 10 Ky. L. Rep. 499, 9 S. W. 696, an allegation that the legal rate of interest in another State is ten per cent and that the stipulation in a · note to pay that rate is lawful and enforceable, is bad, in simply stating the pleader's conclusion.

In Thomas v. Gr. Tr. R. Co., 1 Penne. (Del.) 593, 42 Atl. 987, a plea in an action against a carrier for non-delivery of goods which states facts alleged by plaintiff to be in violation of the the custom laws of Canada and alleges that by reason thereof the goods were seized in transit, is bad in not setting out the terms of the foreign law. More definite even that the foregoing is the ruling of the Supreme Court of Alabama in Forsyth v. Preer, 62 Ala. 443, that a general statement of a foreign law is

insufficient, it being essential that the law itself be substantially pleaded as any other fact.

There is a line of cases of which Angell v. Van Schaick, 132 N. Y. 187, is a type, which holds in pleading the construction of the laws of another State by its courts, that the facts on which the decision is based need not be set out, nor the title of the case, or when it was rendered; these cases hold in addition, however, that it must be distinctly averred what the courts of the State did decide in construing the law. While no specific ruling on the exceptions noted in the Angell case has been made in this jurisdiction, it seems more in accord with that certainty and precision of pleading required by our code, that in addition to a specific statement of the facts as to what the law of the other State is, a direct reference should be made to where the court's ruling may be found.

III.    Aided by the foregoing cases, to which others of like import might be added but for the risk of unduly lengthening this opinion, we come to a consideration of that portion of the petition at bar upon which plaintiffs base their cause of action. After a general averment "that the common law in force and in effect in the State of Kansas is and was in part at all the times mentioned as follows," several paragraphs are added which set forth sometimes abstractly and at other times argumentatively what is alleged to be the law of Kansas relating to wills and charities and the powers and duties of members of school boards. Other than the initial sentence quoted there is nothing either affirmative, definite or precise in these averments. The rule applicable to all allegations of this character that they shall be so framed as to inform the court what the foreign law is, where it may be found and the facts which constitute its violation, is in no sense complied with. [Am. Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Armendiaz v. De La Serna, 40 Tex. 291; Dunham v. Holloway, 2 Okla. 78, 41 Pac. 140; Stockton v. Lehigh, 14 Phila. 77.] As we said in effect in a well considered opinion by Blair, J.,

*This Petition.*

in Furlong v. German-Am. Press Assn., 189 S. W. 385, the language employed, constitutes but bald allegations of the petition and hence insufficient to properly plead the Kansas law. If enough affirmative allegations could be gleaned from these statements to enable it to be determined therefrom what the law relied upon is, we would not feel authorized in holding the pleading insufficient, although otherwise encumbered with statements couched in the form of legal conclusions, but allegations of the character required do not appear. [State ex rel. Peet v. Ellison, 196 S. W. (Mo.) 1103; State ex inf. v. Armour P. Co., 265 Mo. l. c. 144.]

The contention that the petition is sufficient in its stating what the ultimate facts are in regard to the law relied upon, despite the fact that it may contain the de-

Ultimate Facts. fects stated, involves a contradiction apparent to anyone familiar with legal terminology, and hence without merit. Ultimate facts are nothing more than issuable, constitutive or traversable facts essential to the statement of the cause of action; if these had been pleaded, the petition would have been free from the designated defects. [Caywood v. Farrell, 175 Ill. 480, 51 N. E. 775; Read v. State Ins. Co., 103 Ia. 307, 64 Am. St. Rep. 180; Meyer v. School Dist., 4 S. D. 420, 57 N. W. 68; 1 Estes' Pl., sec. 190.] It is scarcely necessary to add that it is axiomatic that legal conclusions cannot be pleaded as ultimate facts (31 Cyc. 70).

Furthermore, contention of plaintiffs that defendants have admitted the existence of the common law of Kansas as to what constitutes a public charity is not tenable.

Admissions. It is elementary that the admissive force of a demurrer has no application to conclusions of law. [State ex rel. v. Harty, 208 S. W. l. c. 837; Maniaci v. Ex. Co., 266 Mo. l. c. 642.]

IV.    Our holding that the failure of the petition to state a cause of action in so far as it attempts to plead the common law of Kansas relied upon by plaintiffs, is

sufficient to authorize an affirmance of the judgment here-

Kansas
Decisions.

in. [Mallinckrodt Chem. Wks. v. Nemnich, 169 Mo. l. c. 397.] We have in addition, however, reviewed the decisions of the Supreme Court of that State to determine if, under a proper pleading, plaintiffs' contention could be sustained. The only case the language of which lends support to plaintiffs' contention is that of Troutman v. DeBoissiere, 66 Kan. 1. While there is language in the opinion in that case declaratory of the conclusions employed by plaintiffs, we find upon an analysis that it is largely *arguendo* or an expression of the views of the judge writing the opinion. The decisive issue in that case was subsequently discussed and determined by the Supreme Court of that State in Washburn College v. O'Hara, 75 Kan. l. c. 702.

The residuary clause of the will in the Washburn case was assailed on the ground that it created a trust which was not a public charity. Troutman v. DeBoissiere was cited as being directly in point and controling upon this question. The Supreme Court of that State in ruling thereon in the Washburn case said: "The argument of the defendants in error is founded chiefly upon a statement in that opinion which reads: 'A public charity is a gift to a public object which the State itself, with public resources, should, or lawfully might, foster.' This proposition does not appear in the syllabus and is not the question upon which the court divided. It cannot be said, therefore, that the court intended to decide that every public charity must be such as the State may lawfully maintain by public taxation. The real point decided was that in the trust there being considered the beneficiaries were limited to such an extent that the gift could not be regarded as a public charity. The statement was used in the opinion by way of an argument to illustrate the general scope and extent of a trust which may be properly classed as a public charity. In that case the fund provided could only be used for the benefit of the orphans of deceased Odd Fellows of the State of Kansas.

This limitation excluded it from the category of public charities.''

The will in the Washburn case in a residuary clause bequeathed the remainder of the testator's estate in trust to the trustees of an incorporated educational institution, to be held by them as a perpetual fund for the higher education of young men to be selected by trustees for the Christian ministry. It was held that such a bequest created an educational trust which is a public charity. There are no other rulings of the Supreme Court of that State as to the adoption of the common law applicable to the facts in the instant case. The ruling principle in the Washburn case is in no wise different from the rule as to public charities adopted in Missouri.

The devise and bequest in the case at bar was ''for the purpose of creating an endowment fund for the education of worthy young men and women of a school district in Jewell County, Kansas, preference to be given by the trustees to those who are orphaned or who are fatherless or motherless and who are desirous or worthy of help in obtaining a higher education.''

Under our rulings the trust created by this will is educational in its nature and constitutes a public charity. [Robinson v. Crutcher, 277 Mo. 1, 209 S. W. 104; Catron v. Scarritt Coll. Ins., 264 Mo. l. c. 725; Strother v. Barrow, 246 Mo. 241; Buchanan v. Kennard, 234 Mo. 117; Crow ex rel. v. Clay Co., 196 Mo. l. c. 260.]

From all of which it follows that the judgment of the trial court should be affirmed and it is so ordered.

All concur.