748

HICKEY et al. v. The RITZ–CARLTON
RESTAURANT & HOTEL CO. OF AT-
LANTIC CITY.
No. 6629.

Circuit Court of Appeals, Third Circuit.
May 2, 1938.

Samuel D. Goodis and Stanley Folz, both of Philadelphia, Pa., and Charles A. Wolverton, of Camden, N. J. (Sundheim, Folz & Sundheim, of Philadelphia, Pa., of counsel), for appellants.

Charles C. Trelease, of Newark, N. J. (Burnett & Trelease, of Newark, N. J., of counsel), for appellee.

Rosenberg, Goldmark & Colin, of New York City (Herman Jervis and Milton M. Bergerman, both of New York City, and W. James MacIntosh, and Morgan, Lewis & Bockius, all of Philadelphia, Pa., of counsel), for intervener appellee Real Estate Bondholders Protective Committee.

John J. Fallon of Hoboken, N. J. (John J. Fallon, of Hoboken, N. J., and Nathaniel

L. Goldstein and Edmund W. Van Voorhis, both of New York City, of counsel), for intervener Louis F. Schultze.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge.

This is an appeal from two orders of the District Court, one denying a motion to dismiss the petition filed under section 77B, Bankr.Act, 11 U.S.C.A. § 207, to reorganize the Ritz Carlton Restaurant & Hotel Company of Atlantic City, hereinafter called the debtor, and the other making permanent the appointment of the trustee of the debtor.

The main question involved in this case is whether or not the petition was filed in good faith.

The debtor, on July 1, 1920, issued $5,500,000 worth of 6 per cent. bonds which were secured by a first mortgage on the debtor's property in Atlantic City. Until July 1, 1931, the debtor operated the hotel and paid the interest on the bonds and in addition paid $1,977,000 on the principal of the bonds, thus reducing the amount to $3,523,000 which is still due.

The interest due July 1, 1931, was not paid and the trustee under the first mortgage took charge of the debtor's property consisting of the Hotel, the Annex, and the Ritz Gardens and operated them as mortgagee in possession. On October 19, 1934, the trustee owed trade obligations of about $85,000 and taxes with penalties of about $190,000.

In May, 1934, the trustee began proceedings in the Court of Chancery of New Jersey to foreclose the mortgage and those proceedings are still pending.

On October 19, of the same year, the trustee leased the property for a term of five years from November 1, 1934 to Mr. William Malamut, hereinafter called the tenant.

The appellants charge that the tenant found the lease so profitable that he is endeavoring to perpetuate his possession of the debtor's property and acquire complete ownership of it at the expense and sacrifice of the bondholders; that in order to do this he obtained an option to purchase a majority of the voting stock of the debtor and later entered into a contract with the bondholders' committee, hereinafter called the committee, with which about 90 per cent. of the first mortgage bonds had been deposited by July 13, 1937. Under the terms of the contract he is to turn over to the committee his option to purchase the stock of the debtor and $8,500 in money, the amount necessary to close the option, and the committee upon acquiring the stock is to cause the debtor to file a petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. A plan of reorganization is to be filed substantially as provided in the contract.

Some of the important provisions of the contract are as follows: A new corporation is to be formed with the tenant or his nominees as stockholders. The new corporation is then to take over all the assets of the debtor, for which it is to issue twenty-year mortgage bonds to the amount of $1,761,500 to be distributed to the present first mortgage bondholders at the rate of 50 cents on the dollar. For the first two years, the new company is to pay interest on the new bonds at the rate of 1 per cent., or $17,615 annually. For the next three years, in addition to the annual payment of $17,615, the new corporation is to pay 20 per cent. of the excess over $375,000 of its gross income for the four months of June, July, August, and September. The same arrangement is to continue for the next five years except that the interest is to be increased from 1 per cent. to 2 per cent. and for the following ten years the interest is to be raised from 2 per cent. to 3 per cent. per annum and the additional payment of 20 per cent. of the gross income for the same four months in excess of $450,000, instead of $375,000. The tenant is also to pay $40,000 annually, to be applied, first, to the payment of the trade obligations incurred by the trustee, which are now reduced to about $30,000, and, second, to the taxes in arrears, amounting now to about $180,000. These payments will cease when the trade creditors and taxes are paid in full. The tenant further agreed to pay $40,000 on the taxes when the real estate is conveyed to the new company, but he may under the agreement place a first mortgage on the property, ahead of the mortgage to secure the $1,751,500 of new bonds. He may thus avoid paying the $40,000 personally in cash when the real estate is conveyed. This mortgage to settle delinquent taxes is to be amortized by the new company at the rate of $25,000 annually, and credit for that amount is to be al-

lowed on the $40,000 which the tenant is to pay annually to trade creditors and for taxes.

The agreement does not provide for new capital to be paid to the new company, and it is evident that the payments which the new company is to make are to be paid out of the operating receipts of the property. In other words, the plan of reorganization to which the debtor and committee are contractually bound contemplates that the tenant, through his new company, will take over the debtor's property, reduce the equity of the bondholders by 50 per cent., operate the hotel until the property pays for itself, and thus make it his own.

The Ritz-Carlton properties are among the best hotel properties in Atlantic City, and it appears that the tenant realized last year from his operation of them a profit of more than $70,000. He purchased the option on the majority of the common stock for $10,000 and has agreed to give the committee $50,000 for expenses to bring about the reorganization on the basis of the contractual "Plan."

The appellants allege that the property, real and personal, to be conveyed to the tenant or to his new company, is conservatively worth $2,500,000. This is to be conveyed to the new company for bonds whose face value is approximately $1,761,500, but, because of the low rate of interest provided in them, their actual value will not in any event exceed $1,000,000. In other words, property worth $2,500,000 is to be turned over to the new company for $1,-500,000 less than its value, or 40 per cent. of its value. A petition to carry out such a plan and scheme, they contend, was not and could not have been filed in good faith. As above stated, the value of the Ritz Carlton properties is really the crux of this case.

The act, in section 77B(a), 11 U.S.C.A. § 207(a), provides that, if three or more creditors who have provable claims which amount in the aggregate, in excess of the value of the securities held by them, if any, to $1,000 or over, shall, prior to the hearing provided for in the section, appear and controvert the facts alleged in the petition, the judge shall determine as soon as may be the issues, and, unless the material allegations of the petition are sustained by the proofs, the proceedings shall be dismissed.

There was quite a discussion between the court and counsel as to whether or not the answer "controverted" any facts, alleged in the petition, which it was necessary to sustain by proof. The court said that the allegation that the petition was not filed in good faith was "not an allegation of fact," and in making that allegation the appellants were "not controverting facts." The answer does controvert certain evidential facts and also the ultimate fact of good faith found by the court.

Counsel for the committee quoted Judge Woolsey, of the Southern District of New York, as saying in the unreported case of In the Matter of Ambassador Hotel Corporation, Index No. 59,948, June 28, 1934, that: "Good faith of petitioners (in debtor petitions) is not an issuable fact, but is a matter for the court to determine."

There are two kinds of facts, evidential and ultimate. What the court meant was that "good faith" in filing a petition was not an evidential fact, but was an ultimate fact for the court to find from the evidential facts. What the court did in the case at bar was to find the ultimate fact of good faith from the evidential facts. "Ultimate facts which are to be pleaded are the issuable, constitutive, or traversable facts essential to the statement of the cause of action, and legal conclusions cannot be pleaded as 'ultimate facts.'" Musser v. Musser, 281 Mo. 649, 221 S.W. 46; United States v. Charpentier, D.C., 49 F.2d 338; Oil Shares, Inc., v. Kahn et al., 3 Cir., 94 F.2d 751, decided February 11, 1938; Brown v. United States, 3 Cir., 95 F.2d 487, decided March 2, 1938.

In Universal Oil Products Co. v. Skelly Oil Co., D.C., 12 F.2d 271, Judge Morris said (page 272): "Plainly, therefore, the facts which must be alleged in order to obtain the benefit of a rule or principle of law are those—termed 'ultimate facts'— found in that vaguely defined field lying between the evidential facts on the one side and the primary issue or conclusion of law on the other."

"Considered with reference to the facts or evidence by which they are established or proved, 'ultimate facts' are but the logical results of the proofs, or, in other words, mere conclusions of fact. An 'ultimate fact' is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts." 65 Corpus Juris p. 1190.

In finding that the petition in the case at bar was filed in good faith, the court found the ultimate fact from the eviden-

tial facts set forth in the petition and the contract between the tenant and the committee. It was this ultimate fact of good faith which the appellants controverted, together with the allegations, among others, that under all the facts of this case, the debtor required relief under section 77B. They alleged that the debtor is the mere creature of the tenant and impliedly working for his interest and against the interest of the creditors with the intention to reorganize for his benefit and not theirs; that liquidation of the debtor or continuation of the lease would be more profitable to the creditors than reorganization under the "Plan" to which the debtor and committee are contractually bound and that the property of the debtor is to be turned over to the tenant for $1,500,000 less than its real value. The appellees did not deny these allegations nor sustain their own by proof as required by the act.

■ The value of the property is the crux of this case. Upon that value largely depends the question of good faith and we do not see how that question could have been determined without evidence of the value of the property. We think that the facts alleged in the answer unexplained and not controverted are sufficient to sustain the allegation that the petition was not filed in good faith, or, at least, to require appellees to sustain their allegations by proof, and this they did not do.

■ The debtor and committee say that if we reach this conclusion the petition should not be dismissed for the reason that some other plan may be presented, for neither the court nor they are bound by the agreement with the tenant.

But as a matter of fact and law the debtor and committee are both contractually bound to the plan set forth in the agreement. The proponents of this plan, after merely mentioning the agreement in the petition in order to comply with the rules of court, did not disclose its contents until the court ordered it to be filed as a part of the petition.

The contract compelled them to file a plan containing the provisions set forth therein and the tenant was bound to accept the plan as filed. If the committee or debtor had filed another plan not containing these provisions of the agreement, the tenant could have instituted and maintained proceedings against it for violating the contract.

Of course, the court is not bound by anything that the debtor or committee does, but nobody else is or has been before it with a plan, and so far as the court knows there is and will be no other plan than the "Plan" of the agreement.

The appellants further say that the committee really misrepresented them in filing the petition with an undisclosed contract committing them to the proposed plan.

■ If the petition is dismissed and the debtor, committee, or creditors desire a reorganization, they may proceed anew without the embarrassment or legal impediments imposed upon them by the contract.

The appellees failed to sustain the material allegations of the petition by proofs, and the orders from which appeals were taken are reversed, with direction to dismiss the petition.