## FIRST METHODIST CHURCH OF POPLAR BLUFF, Appellant, v. JOHN W. BERRYMAN et al.

### Division Two, April 7, 1924.

1. **TRUSTEE: Church Property: Abandonment.** Dual membership in two separate churches of the same denomination is not recognized; and a trustee, and therefore a member of the quarterly conference of a Methodist Episcopal Church in a city, who resided on his farm eleven miles from the city, only occasionally attended its services, and notified its officers that he was unable to make further payments to its support, and that he attended religious services at a church situated on his farm and contributed to its support and for those reasons must use his funds to take care of such rural church, while nominally a trustee of the city church, must be considered as having abandoned his trusteeship and is not to be counted in determining whether a deed conveying the city church was authorized

by a majority of its trustees or members of its quarterly confer-
ence.

2. ———: **Collateral Attack.** The title to the office of trustee of
church property is not subject to attack in a collateral proceeding,
such as a suit to set aside a deed conveying church property made
by trustees who were discharging the functions of their office and
were held out by the church organization as trustees at the time
the negotiations for the sale of the property to the grantees were
going on.

3. ———: **Church Property: Incorporated Church: Order of Sale by
Quarterly Conference.** Where a local society of the Methodist
Episcopal Church has been incorporated and property has been
conveyed directly to the corporation, without the intervention of
trustees, an order of sale of the property by its quarterly conference
is unnecessary, in view of the provisions of the Book of Discipline
of said church, to authorize the trustees to execute a deed of con-
veyance.

4. **CHURCH PROPERTY: Conveyance: Diversion from Pious Use.** A
conveyance of church property by persons purporting to be the
proper officials of an incorporated society of the Methodist Epis-
copal Church, to trustees of a society of the Methodist Episcopal
Church, South, as a place of divine worship for the use of its
ministers and members, subject to the discipline, usage and min-
isterial appointment of said church, is not a diversion or abandon-
ment of the charitable or pious use for which the property had
been conveyed to the corporation.

5. ———: ———: **By Incorporated Society: Presumption of Validity.**
A deed executed by the proper officials of an incorporated church,
and acknowledged in the form prescribed by the statutes pertaining
to conveyances by corporations (Sec. 2188, R. S. 1919), is prima-
facie a good and sufficient conveyance, and such officials are pre-
sumed to have acted regularly and lawfully, and the burden is on
the corporation, in a suit to set aside said conveyance, to prove
that, in executing the deed, they exceeded their authority.

6. ———: ———: **Fraud: Unification of Congregations.** A convey-
ance, by the proper officials of a local society of the Methodist Epis-
copal Church of one hundred members, of its church property, em-
barrassed with debts and unable to pay them, to the trustees of a
society of the Methodist Episcopal Church, South, of three hundred
members, which assumed all the debts, which resulted in a coali-
tion of the two congregations and their harmonious fellowship, was
not contrary to the laws, customs or usages of either church, and
in no sense a fraud, or the result of a conspiracy between the
grantors and grantees to transfer the members and property of the

First Methodist Church v. Berryman.

one to the other, where nearly all the members of the society whose officials made the conveyance affiliated with the other.

7. ——: ——: **Cancellation.** The cancellation of a conveyance will never be decreed except in a clear case, and never for an alleged fraud unless the fraud be clearly made to appear; and a cancellation of a conveyance of church property ·by a church corporation, which held the bare legal title, for the use and benefit of the local society, whose members favored its transfer to another church of like faith and practice and whose officers acted in good faith and without objection, will not be decreed in a suit by the corporation, where the general superintendent of the church knew of the transfer within two weeks after it was made, but made no objection for four months, and then offered to give his consent if the consideration paid and assumed were doubled.

8. ——: ——: ——: **Restoration.** To authorize the cancellation of a deed the grantor must return to the grantee the money paid at the time of its delivery. Retention, without restoration or an offer to restore, is an affirmance of the sale.

Headnotes 1 to 6:  Religious Societies: 1, 34 Cyc. 1133 (1926 Anno), 1160; 2, 34 Cyc. 1133; 3, 34 Cyc. 1160; 4, 34 Cyc. 1164 (1926 Anno); 5, 34 Cyc. 1173 (1926 Anno); 6, 34 Cyc. 1173 (1926 Anno).  Headnotes 7 and 8:  Cancellations of Instruments: 7, 9 C. J. sec. 195; 8, 9 C. J. sec. 93.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*W. H. Meredith* and *E. R. Lentz* for appellant.

(1)  When the deed from Hoag and wife to Hargrove et al. as trustees was executed and delivered, it fastened upon the said property an express and specific trust for the use and benefit of the Methodist Episcopal Church in the United States of America, not the Methodist Episcopal Church of Poplar Bluff, and it can only be diverted by the trustees to the use of any other denomination or body, by a strict compliance with all the requirements of the laws, usages and customs of said church. Perry on Trusts (3 Ed.) Secs. 24, 511; Hayes v. Manning, 263 Mo. 1.  (2)  When the trustees to whom the property was originally conveyed, conveyed their title to the cor-

poration, the said corporation took the legal title thereto impressed with the same trust, with which it was impressed in the hands of the original trustees. Witte v. Storm, 236 Mo. 470; Newcomb v. Brooks, 16 W. Va. 32; Ringo v. Binns, 10 Pet. (U. S.) 281. (3) Where a church has a written constitution, that constitution is the contract of association in the church, binding upon all portions and judicatories thereof. It is the supreme law of the church and must be adhered to in every part thereof. Boyles v. Roberts, 222 Mo. 677; Watson v. Garvin, 54 Mo. 397; Bear v. Hensley, 98 Mich. 279; Bunn v. Gorgas, 41 Pa. St. 446; Watson v. Jones, 80 U. S. 679, 720; Krecher v. Shirley, 163 Pa. St. 534; Kerr's Appeal, 87 Pa. St. 97; Deadrick v. Lampson, 11 Heisk. (Tenn.) 523; Presbyterian Church v. Wilson, 14 Bush. (Ky.) 278. (4) The deed from the corporation, is illegal and void for several reasons, viz.: (a) The order of the quarterly conference to the trustees to sell, was not concurred in by a majority of all the members of the quarterly conference. Neither did the district superintendent consent to such order and sale. Nor did the board of trustees, at any legally constituted meeting of the board, make any application to the said quarterly conference for an order of sale of said property. (b) The board of trustees did not, at any legally constituted meeting of said board, authorize the president to make the said deed, either by resolution or otherwise. (c) William Spaulding who assumes to act as president of said board was not in fact president of the said board, having not been elected as such at any legally constituted meeting of the said board. (d) Neither Spaulding nor Gierthn nor Reitz was a member of the corporate body of the First Methodist Episcopal Church of Poplar Bluff, not having signed the articles of association of said corporation, nor thereafter received as members thereof, as provided in any by-law of said corporation, and were ineligible to hold any office in said corporation. (e) The sale and the proceedings leading up to it were illegal, fraudulent and void as being the result of an unlawful combination, confederacy and

conspiracy to transfer the membership and property from the plaintiff to the defendants, in violation of the laws, usages and customs of the said church. Book of Discipline of M. E. Church (1916 Ed.), secs. 104 and 105, pp. 94 and 95; Ib., sec. 361, p. 239. The laws of the Methodist Episcopal Church forbid the trustees as well as the quarterly conference to dispose of the church property for the payment of current expenses of the church. Book of Discipline, sec. 352, p. 235. (5) The general, if not the universal rule is, that notice of time, place and purpose of the meetings of the board of directors, or trustees, as here, of the corporation must be given by personal notice to each director, or trustee, and if the notice is not so given the acts of the persons present will be void and will not bind the corporation. Thompson on Corporations, sec. 1140; Dillon on Municipal Corporations (4 Ed.) sec. 262; Morris on Private Corporations (2 Ed.) secs. 477, 482, 521, 532; Angel and Ames on Corp., sec. 492; Green's Bryce's Ultra Vires, sec. 450 and notes; 10 Cyc. 323; 17 Am. & Eng. Ency. Law, p. 93; Hill v. Coal Mining Co., 119 Mo. 9; People v. Batchelor, 28 N. Y. 154. The acts and proceedings of the board of trustees can only be proven by its records. Harrison v. Dean, 7 Mo. App. 210; Kane v. School District, 68 Mo. App. 408; Viernow v. Carthage, 130 Mo. App. 276. In order to convey the society's property the persons so doing must be duly authorized. James v. M. E. Church, 198 Ill. 626; Allen v. North Des Moines M. E. Church, 102 N. W. 808. (6) While a deed signed by the president of the corporation is prima facie valid, yet it may be impeached by showing that the president was not authorized to sign it, or that he was not in fact the president of the said corporation. Hall v. Bank, 145 Mo. 418. (7) The decree rendered in this case cannot stand, whatever view may be taken of the case as a whole. The uncontradicted testimony is that only $1659 of the consideration of $5203 has been paid. The balance remains wholly unpaid. But the decree forever enjoins and restrains the plaintiff from claiming or asserting any right, title or claim to the said

property or any part of it, thereby forever preventing the plaintiff from having or asserting any claim for the balance of the purchase price as shown by the said deed. (8) Whenever a question of fraud is involved in the issues, then any unusual clause inserted in a deed, any unusual method of transacting the business, apparently done to give the transaction an air of good faith, is in itself a badge of fraud; for whenever the part is overacted the delusion is broken and the fiction disappears. Snell v. Harrison, 104 Mo. 158; Hoge v. Hubb, 94 Mo. 489; Baldwin v. Whitcomb, 71 Mo. 651; Houts v. Shepherd, 79 Mo. 147; Cole v. Cole, 231 Mo. 236; Bump on Fraudulent Conveyances, sec. 50.

*Atkinson, Rombauer & Hill* for respondents.

(1) "The Discipline of the Methodist Episcopal Church and Methodist Episcopal Church, South, so far as the articles of faith and articles of religion are concerned, are exactly the same." (2) "Plaintiff admits that the two articles are the same, and the court may take that question as definitely settled and proven by the testimony." (3) By the deed to the plaintiff the property in suit was dedicated to pious use, and by the deed from plaintiff to defendants was re-dedicated to the same pious use, and was not diverted from such use. Strother v. Barrow, 246 Mo. 241. (4) A deed by a church corporation in Missouri is held to be a deed by a private corporation. Strother v. Barrow, 246 Mo. 241. (5) The deed was executed in accordance with the laws. Secs. 2177, 2188, R. S. 1919. (6) Whether or not it was necessary, the deed in the instant case was executed in accordance with the Discipline of the Methodist Episcopal Church. (7) The by-laws of the plaintiff were not offered or read in evidence. (8) The doctrine of estoppel and waiver are recognized in church transactions as well as in other matters. Bushong v. Taylor, 82 Mo. 450; McCallister v. Ross, 155 Mo. 87; Ohio & Miss. Railroad Co. v. McPherson, 35 Mo. 13; North St. Louis Christian Church v. Mc-

Gowan, 62 Mo. 279; Washington Mutual Fire Insurance
Co. v. St. Mary's Seminary, 52 Mo. 480; Dudley v. Clark,
255 Mo. 571; Strother v. Barrow, 246 Mo. 241; Hayes v.
Manning, 263 Mo. 1.

HIGBEE, C.—This is an action to cancel a deed,
dated September 6, 1918, ostensibly executed by plain-
tiff's officers, conveying a lot and building thereon in
Poplar Bluff then owned and used by plaintiff as a place
of worship, to the defendants as trustees for the Metho-
dist Episcopal Church, South, of that city. On a trial,
the court dismissed the petition and decreed title to the
premises in suit to be in defendants as trustees for the
Methodist Episcopal Church, South. ' Plaintiff appeals
and contends that on the evidence the judgment should
have been in its favor. The pleadings are very lengthy.

The petition was filed on May 7, 1921. It avers, in
substance, that on September 6, 1918, and prior thereto,
plaintiff, a religious corporation, was the owner of said
property and occupied it as a place of worship; that the
defendants, fraudulently conspiring with W. H. Yount,
then pastor of plaintiff church, and with William Spauld-
ing, J. Elliot Smith, W. F. S. Taylor, Ira W. Seybold,
Louis F. Ritz and C. A. Gierth, who falsely claimed and
pretended to be officers and trustees of plaintiff corpora-
tion, for the purpose of cheating and defrauding plain-
tiff out of said property, did procure said Spaulding, act-
ing as president, and said Smith, acting as secretary, to
execute a deed conveying said property to defendants as
trustees of said Methodist Episcopal Church, South,
which deed was also signed by said Spaulding, Smith,
Taylor, Seybold, Ritz and Gierth as trustees, for the ex-
pressed consideration of $5203; that no part thereof was
paid, but said deed was wholly without consideration;
that plaintiff was duly incorporated December 4, 1906;
that Article VIII of the articles of association reads:
"This Association shall have power, with the consent
of the Quarterly Conference of said Methodist Episcopal
Church, preacher in charge and presiding elder of the

303 Mo. Sup.—31.

district, to sell or mortgage any real estate that may be hereafter acquired by it, to secure funds for improvements made, whenever it shall become expedient to do so; in which event, the proceeds shall be used and applied in accordance with the Discipline of the said church; but in no event shall the property be mortgaged to secure the current expenses of the said church."

That thereafter on October 8, 1907, the trustees, holding title for the First Methodist Episcopal Church of Poplar Bluff, before its incorporation, conveyed said property to the plaintiff corporation as a place of divine worship for the use and benefit of the ministry and membership of the Methodist Episcopal Church.

That Section 361 of the Book of Doctrines and Discipline of the Methodist Episcopal Church provides:

"Whenever it shall become necessary for the payment of debts, or with view to re-investment, to mortgage or make sale of the church that may have been conveyed to *trustees of a church corporation,* for either of the foregoing purposes, the said trustees or their successors, upon application to the Quarterly Conference may obtain an order for mortgage or sale—a majority of all the members of the Quarterly Conference concurring, and the pastor of the church and the district superintendent of the district consenting—with such limitations and restrictions as the Quarterly Conference may judge necessary, said trustees may mortgage or sell and convey such property."

That the trustees of plaintiff corporation did not make an application to the quarterly conference for an order for the sale of said property, nor did a majority of all the members of the quarterly conference concur in the proposition to sell said property, nor did the district superintendent of said district consent thereto and that said sale was void.

That Spaulding was not president, nor were he and said Taylor, Ritz or Gierth trustees, of said corporation; that said deed was made in furtherance of an agreement and conspiracy between defendants and the said pre-

tended officers of plaintiff corporation for the purpose of transferring the membership and property of the church and corporation to the use and benefit of the defendant Methodist Episcopal Church, South, in disregard of the laws, customs and usages of the Methodist Episcopal Church in the United States of America, which fraudulent purposes were known and participated in by the defendants at the time they accepted said deed.

That defendants took possession of said property upon the execution of said deed. The prayer is for the cancellation of the deed, for rents and profits and for restoration of the property.

The answer is a general denial and a cross-bill averring in substance the purchase of the property in good faith and the execution of the deed conveying said property by plaintiff through its proper officers to the defendants as trustees of the Methodist Episcopal Church, South, of Poplar Bluff, for church purposes, which church then had and ever since has had the same articles of faith and creed as the Methodist Episcopal Church; that said purchase by the defendants was part of a plan to unite said churches for worship in the church building on said premises, which plan has been almost completely accomplished, and now said church property is the place of regular worship of 729 members largely made up of the membership of the theretofore separate churches; that $5203 was the monetary consideration expressed in the deed; that before defendants or any officer of the defendant church had notice that plaintiff claimed any fraud had been perpetrated by any of plaintiff's officials in said transaction, the defendant paid in cash of said consideration $1659.34, and obligated itself to pay the balance thereof to various creditors of plaintiff and since said purchase have offered to pay and are still ready and willing and offer to pay the whole of said consideration; that defendants have expended more than $1000 in improving said property; that the several officials who executed said deed were at the time held by plaintiff and represented to defendants by plaintiff as the *de jure* officials and legal

representatives of plaintiff and authorized to sell and convey said premises, and defendants, so believing, paid and assumed the consideration of said deed, which constituted the amount of plaintiff's indebtedness at the time of said purchase; that said premises were so sold for the purpose of, paying such debts and uniting the two churches; that the purchase of said property and the plan of uniting said churches was immediately published in the newspapers in said city, all of which facts plaintiff well knew at all times; that plaintiff stood by, saw the transaction made, the money paid and the balance assumed without protest or objection, and since the sale and until the commencement of this suit, have acquiesced therein and ought to be estopped from prosecuting or maintaining this suit; that defendant trustees are the owners of the legal title to said premises for the use and benefit of defendant church and plaintiff's claim is adverse and prejudicial to the rights of defendants. Wherefore defendants pray the court to dismiss the petition and to determine and adjudge by its decree the title to said property, etc.

The reply re-avers allegations of the petition as to fraud, etc.

There are some facts conceded or not contested. The plaintiff, the Methodist Episcopal Church of Poplar Bluff, had a membership of about one hundred, a lot and church building, variously estimated to be worth from $6000 to $25,000, but no parsonage. It was bankrupt, unable to pay the sums due its pastors, the district superintendent, its janitor or its current bills. Its indebtedness, in August, 1918, was $5203. This included two notes secured by deeds of trust on the property for about $3544, principal and accrued interest, and various other debts to the amount of about $1659. The church building needed a furnace and various repairs. The Methodist Episcopal Church, South, had a membership of about three hundred, a good parsonage, but no church building. The Articles of Faith and Discipline of the Methodist Episcopal Church and the Methodist Episcopal Church,

South, were identical and had been ever since the separation or division of the Methodist Episcopal Church in 1844 over the question of slavery. For a year or more there had been a growing, if not an overwhelming, sentiment in favor of the union of the two local religious bodies. Mr. Yount, the pastor, testified he had discussed the condition of the church and the necessity of the sale of the church property to the Methodist Episcopal Church, South, with Dr. Crissman, district superintendent, and had written him several letters urging the calling of a quarterly conference to consider a proposition to sell the property. Yount telegraphed Crissman on August 5, 1918, and received the following telegram in answer:

"Rev. W. E. Yount, Poplar Bluff, Mo. Your letter at hand. You are hereby authorized to call Fourth Quarterly Conference August 8th or any other suitable date to transact such business as you deem wise. Will write you tomorrow."

Yount accordingly called a quarterly conference for August 12, 1918, making the usual announcements thereof from the pulpit at the morning and evening services on the previous Sunday. The record of this meeting shows present: W. H. Yount, acting presiding elder; Dr. Seybold, Dr. Taylor, Wm. Spaulding, Mrs. Marion Sanders, Louis F. Ritz, Miss Rubie Phillips, Mrs. Wm. Spaulding, and Joe Kilpatrick, Ira W. Seybold and W. F. S. Taylor, elected trustees. The record of the meeting shows Wm. Spaulding, J. E. Smith, C. A. Gierth, Ira W. Seybold, W. F. S. Taylor, Louis F. Ritz and C. H. Hargrove to be the trustees of the church property and that the names of Ira Seybold and W. F. Taylor were approved for members of the quarterly conference.

The record further recites that the board of trustees made a written application to the quarterly conference for an order to mortgage or sell the church property, nine voting for the order and none against it. It then recites that W. H. Yount, pastor and acting district superintendent, consented to the order. The record is signed by W.

H. Yount, Chairman, District Superintendent pro tem., and Louis F. Ritz, Secretary. The application for the order, stating that the board of trustees find the church is bankrupt, signed by Wm. Spaulding, president of the board, was read in evidence. Plaintiff next read the record of a meeting of the board of trustees on August 20, 1918, showing Yount and four trustees present and the election of Spaulding as president, Seybold, treasurer, and Smith, secretary. Then follows a list of the debts of the church, totalling $5202.44.

Dr. B. F. Crissman, who was District Superintendent of the St. Louis Conference of the Methodist Episcopal Church, including Poplar Bluff, in 1918, testified: "I did not give my consent to the sale of the church property at Poplar Bluff. I knew nothing about the contemplated sale until I read it in a daily newspaper about two weeks after it occurred, that the sale had been made. I did not appoint Yount district superintendent *pro tem*. He had no authority to act as such. He had authority to preside at the Conference. As soon as I could I came down here (it was on January 15, 1919) and called a meeting of our church and we had a meeting in the Masonic Club rooms with the officers of the Methodist Episcopal Church, South. I told them I had not consented to the sale. I told them the property was worth $25,000, and rather than go into court I would consent and approve the sale for a consideration of $10,000. This offer was declined. My term expired September, 1919. I did not know the indebtedness amounted to $5202. I don't know that I got any of the proceeds of the sale. (Check $50 here shown witness from Dr. Seybold, treasurer of the church, dated September 8, 1918). I cashed it and got the money. We ceased having a pastor here sometime after this sale." There was evidence that a copy of the minutes of the meeting authorizing the sale was sent to Dr. Crissman, with the check, immediately after the sale and that the check was cashed September 13, 1918.

I. It is insisted that neither Spaulding, Taylor, Ritz nor Gierth were trustees or members of the quarterly

First Methodist Church v. Berryman.

conference, and that Spaulding was not president of the board of trustees at the time the deed was ex-

**Trustee.**

ecuted, and that Hargrove was not notified of the meeting of the quarterly conference or board of trustees, and that the order of sale was not made in accordance with the laws, customs and usage of the church, and the sale was unauthorized and void. Counsel say the quarterly conference consisted of eleven stewards and seven trustees. (This statement is undisputed). They say also that Hargrove was one of the trustees. If Hargrove was not one of the trustees, the order of sale was made by a majority of the quarterly conference.

Hargrove had not formally withdrawn from the church or resigned as a trustee thereof. For several years he had resided on his farm, eleven miles from Poplar Bluff, and attended divine services and contributed financially to the support of a church on his farm. He had notified one of the stewards, William Strothers, collector for the church, that he would be unable to make any further payments, and that he would have to use his funds to take care of the church on his farm. He had not attended church services more than once or twice at Poplar Bluff in the year preceding the sale. Dr. Yount testified that he did not see Hargrove at any service of the church during his pastorate. Although nominally a member of the board of trustees and the quarterly conference, he was not in fact a member of either body and should not be so considered in the determination of this case. Dual membership is not recognized; he had abandoned his office of trustee in the church at Poplar Bluff. Dr. Spaulding was elected president of the board of trustees in June or July, 1918, and thereafter acted as such, but the minutes of the meeting at which he was elected had been lost, in consequence of which a record was made of his election on August 20, 1918. All of the members of plaintiff's board of trustees, including Dr. Spaulding as president, and Dr. Smith as secretary, executed the deed in question under the corporate seal of the church, to the defendants. Without further setting out the evidence, it is

clear beyond controversy that the six trustees above named were the actual incumbents, the *de facto,* if not *de jure,* trustees and officers of the plaintiff, and were discharging the functions of such offices at the time of the negotiations for and the sale of the church property to the defendants, and were so held out by the plaintiff to the defendants. No one disputed the title of either one to his office. Their titles to the offices of trustees are not subject to attack in a collateral proceeding. [34 Cyc. 1133.] Moreover, we think it clear under the evidence, that Dr. Yount, the pastor, when presiding at the request and in the absence of the district superintendent, had authority, in his stead, to consent to the order of sale. However, as the property had been conveyed directly to the corporation, without the intervention of trustees, an order of sale by the quarterly conference was unnecessary to authorize the trustees to execute the deed of conveyance. [See Sec. 361, Book of Discipline, supra.]

II. The deed sought to be cancelled conveyed the property in trust to the defendants as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church, South, subject to the discipline, usage and ministerial appointments of said church. This was not a diversion or abandonment of the charitable and pious use for which the property had been conveyed to the plaintiff. [Strother v. Barrow, 246 Mo. 241, 151 S. W. 960; Musser v. Musser, 281 Mo. 649, 666, 221 S. W. 46.] The deed was executed by persons purporting to be the proper officials of the plaintiff corporation and under its corporate seal. The certificate of acknowledgment is in the form prescribed by Section 2188, Revised Statutes 1919, in the case of a conveyance by a corporation. It is therefore prima facie a good and sufficient conveyance by the corporation. The trustees are presumed to have acted regularly and lawfully and the burden is on the plaintiff to prove that the persons executing the deed exceeded their authority in the prem-

*Pious Use.*

*Conveyance by Corporation.*

ises. [McCallister v. Ross, 155 Mo. 87, 94; Strother v. Barrow, 246 Mo. 241, 257, 151 S. W. 960; Dudley v. Clark, 255 Mo. 570, 589.]

III. Without reciting the evidence of the numerous witnesses for the defendant, it suffices to say that it establishes the facts pleaded in the answer and cross-bill. The fraud relied on by the plaintiff is that the sale was Fraud.    made in furtherance of a conspiracy between the defendants and the pretended officers of the plaintiff for the purpose of transferring the membership and property of the plaintiff to the use and benefit of the Methodist Episcopal Church, South, in disregard of the laws, customs and usages of the Methodist Episcopal Church. Both ecclesiastical organizations have the same articles of religious faith. The Methodist Episcopal Church, South, owned no church building. The officers of that church agreed to pay all of the plaintiff's debts, take over its house of worship and dedicate it to the same pious use to which it was theretofore devoted. It was not shown that the union of the two local churches was contrary to the policy, laws, customs or usages of the Methodist Episcopal Church. On the contrary, it was shown by Dr. Campbell, district superintendent, plaintiff's witness, that several unions of local churches of the two denominations in this State have been effected. It is a matter of history that the Methodist Episcopal Church was disrupted in 1844 over the question of slavery and that for many years earnest efforts have been and are still being made for healing that unfortunate breach. There was an entire failure of proof that the union of the two local churches was a condition of the sale or that such union was or is contrary to the policy, laws, customs or usage of the Methodist Episcopal Church. The coalition depended upon the will of the individual members of the Methodist Episcopal Church. The evidence was that it was earnestly hoped and believed by the officers of each church that such union would be consummated and that it was the judgment of all parties participating in the nego-

tiations that a sale of the property was for the best interests of Methodism, with the expectation that the two congregations would unite in one common fellowship.

This anticipation was realized. Nearly all the members of the Methodist Episcopal Church affiliated with the other fold. From two small congregations, one unable to function or pay its debts, the united body at the time of the trial had grown to a membership of 729. Peace and harmony have ever since prevailed and they may say with commendable pride: "Behold, how good and pleasant it is for brethren to dwell together in unity." The accusation of fraud is without justification, palliation or excuse in the evidence.

IV. Possession of the church property was at once delivered. That is averred in the petition. Such a thing could not have been done in a corner. The Annual Conference of the Methodist Episcopal Church seemed to Cancellation. have had notice of and acquiesced in the transaction, as no pastor has since been assigned to that charge. The first note of dissent appears to have been sounded by the district superintendent more than four months after the deal was closed, when he summoned the defendants to meet him and told them that he had not given his assent to the sale. He did not protest against the sale as being fraudulent or contrary to the policy of the church, but announced that he would consent if they would pay an additional $5000. This was declined. He admitted that he read a notice of the sale within two weeks after it occurred. He was succeeded by another district superintendent on October 1, 1919, after which the latter consulted an attorney and this suit was begun May 7, 1921, but by whose authority it does not appear. The six trustees who executed the deed and had exclusive charge of the secular affairs of the church were witnesses for the defense, and testified that the sale was the only thing they could do, that it was made in good faith and without objection, so far as they knew, and was for the best interest of Methodism.

The plaintiff's case does not appeal to a court of conscience. The title, it is true, was in the plaintiff corporation, but for the use and benefit of the members who, no doubt, had furnished the money for the purchase of the lot and the erection of the building. The plaintiff acquiesced in the sale; it stood by and permitted nearly the entire membership, on the faith of the sale, to affiliate with the other fold. The church building was and still is their home, their place of public worship. The new fellowship, perfected with so much unanimity and concord, should not be broken or disturbed or deprived of its house of worship on a stale claim based on an empty technicality. The plaintiff is estopped by its acquiescence to prosecute this action.

"In arriving at a proper judgment, it will be well to remember that when one seeks to cancel his solemn contract on account of the fraud of the other party, no half-hearted, halting, evasive evidence will answer; his proof must be 'so clear, definite and positive as to leave no reasonable ground for doubt.' [Jackson v. Wood, 88 Mo. 76, 78.] 'In general, the cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear.' [Cohron v. Polk, 252 Mo. 261, 281.]" [Bragg v. Kirksville Packing & Warehouse Co., 205 Mo. App. 600, 604, 226 S. W. 1012, 1013. See, also, McConnell v. Deal, 246 S. W. 594, 597.]

The right to rescind a contract on the ground of fraud must be exercised promptly on the discovery thereof. [Taylor v. Short, 107 Mo. 384, 392; McCaw v. O'Malley, 249 S. W. 41, 45.]

V. The plaintiff prosecutes this action without an offer to return the money paid by the defendants. Plaintiff cannot retain the money paid on delivery of the deed and proceed in disaffirmance thereof. It must make restoration or offer to do so. Retention of the purchase money is an affirmance of the

Restoration.

sale. [Girard v. St. Louis Car Wheel Co., 123 Mo. 358, 384.] ''The rule that a plaintiff seeking rescission must, as a condition of relief, restore to defendant all the benefits received under the contract is founded obviously on the principle that 'he who asks equity must do equity.' '' [9 C. J. 1209.]

The judgment of dismissal heretofore entered is set aside. The judgment was manifestly for the right party and is affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.